An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1154

Filed 5 August 2026

Cherokee County, Nos. 25JT000001-190, 25JT000002-190, 25JT000003-190, 25JT000004-190, 25JT000005-190

In the matter of: Z.G.W., Z.D., Z.D., G.D., G.D.

Appeal by respondent mother from order entered 18 August 2025 by Judge Kristy Parton in Cherokee County District Court. Heard in the Court of Appeals 21 July 2026.

>*Mercedes O. Chut, for the respondent-appellant-mother.*
>
>*Densmore Consulting, PLLC, by Jack Densmore, for the Cherokee County DSS, petitioner-appellee.*
>
>*Administrative Office of the Courts, GAL Appellate Counsel Matthew Wunsche for guardian ad litem.*

TYSON, Judge.

Respondent-Mother appeals from the trial court's order terminating parental rights to her children. We affirm.

## I.   Background

Respondent-Mother is mother of five children: "Zaida," born in 2011; "Zoe," born in 2012; "Zendaya," born in 2014; "Graham," born in 2017; and "Gus," born in

2019. Respondent-Father is the father of the four younger children. *See* N.C. R. App. P. 42(b) (pseudonyms used to protect the identity of the minors). The father of the oldest child, Zaida, is not a party nor involved in this case.

The Cherokee County Department of Social Services ("DSS") took non-secure custody of the children on 1 September 2021 due to alleged concerns about the family's living conditions, the children's unaddressed dental issues, and alleged drug use in the home. Hair follicle drug screens were performed on all five children and tested positive for methamphetamine. Respondent-Mother and Respondent-Father denied any knowledge of how the children's hair follicles could have tested positive for methamphetamine. The children were adjudicated as neglected on 20 September 2021.

Respondent-Mother and Respondent-Father entered into a case plan with DSS to address mental health, substance abuse, parenting skills, and remediation of health and safety issues in the home. Portions of the home's flooring needed replacing and the house was infested with roaches. DSS arranged to pay for the floor repairs and extermination.

The first permanency planning hearing was held on 24 January 2022. The court found the parents had made "substantial progress" on their case plans. The repair work on the home was well underway and the house was cleared of garbage. DSS was in the process of contracting with an exterminator to begin the insect

extermination. Both parents had completed their mental health and substance abuse assessments.

The case was reviewed in March 2022. Other than a hair follicle sample obtained on the day of the court hearing, Respondent-Mother did not submit to any of the seven requested drug screens in February and March 2022. That hair follicle sample subsequently tested positive for amphetamine, methamphetamine, marijuana, and Carboxy THC.

On 1 April 2022, Respondent-Mother tested negative for substances, but the urine sample was asserted to be diluted. She tested positive for methamphetamines on 6 May and 9 May 2022, and negative for substances on 18 May 2022. Respondent-Mother did not present for the next two requested drug screens on 20 May and 3 June 2022. On 8 June 2022, she tested negative for substances, but the urine sample was again asserted to be diluted. The next requested sample on 24 June 2022 was tested and was positive for methamphetamines and marijuana.

The case was subsequently reviewed on 17 October 2022. Most of the remediation of the flooring in the home had been completed, but a few areas still needed repair. However, Respondent-Mother had moved out of the home and was residing in a one-bedroom apartment with a boyfriend. The permanent plan for the children remained reunification with the parents with a concurrent plan of adoption.

The parents reconciled but they moved out of the home. In June 2023 they were living with Respondent-Father's mother, which DSS did not consider to be an

appropriate placement for the children. Following a permanency planning hearing held over three days in September, October, and December 2023, the court changed the permanent plan from reunification with the parents to adoption with a concurrent plan of reunification.

Respondent-Mother's most recent drug screen occurred on 22 May 2023, and it was positive for marijuana and Carboxy THC. DSS requested drug screens from Respondent-Mother on three occasions in August, September, and October 2023. She did not present for those screens.

The parents subsequently moved into a house located in Robbinsville, North Carolina owned by Respondent-Father's employer. DSS visited the home in July 2024 and determined the home was appropriate for the children. The parents separated again in October of 2024, and Respondent-Mother moved into the home of a friend.

Zaida, Zoe, and Zendaya were placed together in a group home from the beginning of the case. The two youngest children, Graham and Gus, were placed in a licensed foster home. The parents were permitted supervised visits and phone calls with the children. The parents consistently visited with all of the children and the visits were positive. The parents would bring food and gifts for the children to their weekly visits. The parents communicated consistently with DSS and the guardian *ad litem* throughout the case. Both parents successfully completed a parenting program in September of 2022.

Both parents were ordered to pay child support in the amount of $50.00 per month for all five children. Neither parent paid any money toward support for the children in the six months preceding the filing of the termination of parental rights petitions.

On 31 December 2024, DSS filed petitions to terminate parental rights to all five children. At the time of the termination hearing on 21 May 2025, Respondent-Mother was still living with her friend and DSS reported the residence was not an appropriate home for the children. She failed to submit to seven of the eight drug screens requested within the six months prior the filing of the petitions.

The trial court found sufficient grounds to terminate both parents' rights to the children based upon N.C. Gen. Stat. §§ 7B-1111(a)(1) (neglect), 7B-1111(a)(2) (failure to correct the conditions which led to the children's removal), 7B-1111(a)(3) (failure to pay a reasonable portion of the cost of care), and 7B-1111(a)(6) (dependency). Respondent-Mother appeals.

## II. Issues

Respondent-Mother argues: (1) the trial court erred by substituting prior court orders for evidence and admitting inadmissible hearsay; and, (2) insufficient evidence was presented to support termination of her parental rights based upon any statutory ground DSS alleged.

## III. Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7B-1001(a)(3)

(2025).

## IV.    Standard of Review

This Court reviews a trial court's decision to terminate parental rights by examining "whether the court's findings of fact are supported by clear, cogent[,] and convincing evidence and whether [those] findings support the conclusions of law. Any unchallenged findings are deemed supported by competent evidence and are binding on appeal. The trial court's conclusions of law are reviewed *de novo*." *In re T.B.*, 380 N.C. 807, 812, 870 S.E.2d 119, 123 (2022) (citation omitted).

## V.    Evidentiary Issues

### A.  Judicial Notice of Prior Court Orders

Respondent-Mother argues the trial court erred by taking judicial notice of findings of fact contained in the prior permanency planning review orders, because the evidence presented in the prior hearings was subject to a lower standard of proof. We disagree.

In the termination of parental rights adjudication proceeding, the trial court considered testimony from the social worker assigned to the case and the *guardian ad litem* volunteer. Respondent-Mother's attorney timely objected when DSS's attorney asked the social worker for information outside the six months preceding the filing of the petitions. Her attorney argued DSS should be required to present testimony subject to cross-examination regarding Respondent-Mother's progress on her case plan. In response, the trial court stated it was "taking judicial notice of all

of the prior orders entered in the underlying files, including all of the findings of fact in those orders."

Respondent-Mother correctly asserts "the trial court may not rely solely on prior court orders and reports but [it] must receive some oral testimony at the hearing and make an independent determination regarding the evidence presented." *In re T.N.H.*, 372 N.C. 403, 410, 831 S.E.2d 54, 60 (2019) (citing *In re A.M.*, 192 N.C. App. 538, 541-42, 665 S.E.2d 534, 536 (2008), *appeal after remand,* 201 N.C. App. 159, 688 S.E.2d 118 (2009) (unpublished)). In *T.N.H.*, like in this case, the trial court took judicial notice of the entire record and the social worker assigned to the case openly testified regarding the mother's historical and current progress on her case plan. *Id.*

The Court held, "[t]he trial court's findings of fact appear to be based, at least in part, on testimony provided at the hearing, sufficient to demonstrate. . . the trial court made an independent determination regarding the evidence presented." *Id.* at 410, 831 S.E.2d at 60-61. The trial court expressly applied the "clear, cogent[,] and convincing evidence" standard in all prior permanency planning orders in this case. *In re T.B.*, 380 N.C. at 812, 870 S.E.2d at 123. Although the standard is higher than required for dispositional hearings, our Supreme Court has held application of the higher standard is not prejudicial and, instead, is favorable to the parent because DSS is required to present "stronger proof" to support termination. *In re L.E.W.*, 375 N.C. 124, 128, 846 S.E.2d 460, 464 (2020).

Respondent-Mother has failed to show the trial court improperly received and

noticed prior dispositional orders, and it did not apply the clear, cogent, and convincing evidence standard to the testimony presented at the hearing to support its findings and conclusions. *Id.; In re T.N.H.* at 410, 831 S.E.2d at 61. This argument is overruled.

## B. Hearsay

Respondent-Mother argues the DSS files allowed into evidence contained inadmissible hearsay, and DSS failed to lay a foundation for the business records exception to the hearsay rule under N.C. Gen. Stat. § 8C-1, Rule 803(6) (2025).

A business record "is admissible when a proper foundation is laid by testimony of a witness who is familiar with the records and the methods under which they were made so as to satisfy the court that the methods, the sources of information, and the time of preparation render such evidence trustworthy." *In re S.D.J.*, 192 N.C. App. 478, 482, 665 S.E.2d 818, 821 (2008) (citation and internation quotation marks omitted).

The social worker testified to her involvement in the case from January of 2025, subsequent to the filing of the petitions. When asked if she had reviewed the file maintained by DSS, the social worker stated she looked at the six-month period prior to the filing of the petitions, and her testimony was focused on the parents' progress during that time period. The social worker repeatedly expressed a lack of knowledge about events prior to her assignment to the case.

An erroneous admission of hearsay testimony will not result in reversible error

without a showing of prejudice. *State v. Allen*, 127 N.C. App. 182, 186, 488 S.E.2d 294, 297 (1997). As discussed below, Respondent-Mother remained without appropriate housing for the children and could not or refused to demonstrate she was not using illegal drugs at the time of the termination hearing. The social worker had firsthand knowledge of these things since she became involved in the case more than a year prior to the hearing. Respondent-Mother has failed to show prejudice in purported admission of hearsay. *Id.* This argument is overruled.

## VI. N.C. Gen. Stat. § 7B-1111(a)(2)

Respondent-Mother argues the trial court erred by finding and concluding grounds exist to terminate her parental rights under N.C. Gen. Stat. § 7B-1111(a)(2) (2025). We disagree.

The court may terminate parental rights upon finding a parent "has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2) (2025). "A finding of willfulness is not precluded even if the respondent has made some efforts to regain custody of the children." *In re Nolen*, 117 N.C. App. 693, 699, 453 S.E.2d 220, 224 (1995) (citing *In re Becker*, 111 N.C. App. 85, 95, 431 S.E.2d 820, 826-27 (1993)).

The children had remained in DSS custody for three years and almost nine months at the time of the termination hearing. The main issues, which led to their

removal, were the use of methamphetamines by the parents in the home and the safety and condition of the home.

## A. Housing

The family's home required substantial flooring repairs and cockroach extermination before the children were permitted to return to it. The record shows the flooring repairs were substantially completed and the home was exterminated. The record is unclear why the parents had moved out of this home. They briefly moved in with Respondent-Father's mother before renting their own residence in Robbinsville, which was determined to be appropriate for the children in July of 2024.

However, Respondent-Mother moved out of this home in October of 2024. The trial court found:

> k. That the Respondent Mother has been unable to secure safe and stable housing for the juveniles.
>
> l. That on or about November 15, 2024, the Respondent Mother reported she was temporarily staying with a friend.
>
> m. That the Respondent Mother has consistently reported that her current residence in Marble, NC would not be an appropriate home for the juveniles.
>
> n. That as of May 8, 2025, the Respondent Mother continues to reside with her friend in Marble, NC.
>
> o. That the respondent mother does not currently have appropriate housing for the children by her own admission.

The evidence and uncontested findings of fact demonstrate Respondent-Mother admitted she was unable to provide and lacked appropriate housing for the

children.

## B. Substance Abuse

The five children were exposed to methamphetamine while they lived with the parents. Respondent-Mother submitted to only one of the eight requested drug screens in the six months preceding the filing of the termination of parental rights petitions. That urine screen was negative for illegal substances and the hair follicle screen was positive for marijuana and Carboxy THC.

The history of the case shows Respondent-Mother has consistently failed to submit to requested drug screens. Several drug screens she completed returned positive results for methamphetamines and/or marijuana. Respondent-Mother's "sporadic efforts" does not preclude a finding of willfulness where she "had more than three and one-half times the statutory period of twelve months in which to take steps to improve her situation, yet she has failed to do so." *In re Nolan,* 117 N.C. App. at 699, 453 S.E.2d at 224.

The uncontested findings of fact show Respondent-Mother did not maintain appropriate housing for the children. Due to her failure to attend numerous drug screens and testing positive on other occasions, she was unable to demonstrate she was not using illegal drugs or had made progress to positively and permanently address her substance abuse issues. The evidence and uncontested findings of fact support the trial court's conclusion Respondent-Mother had willfully failed to make reasonable progress to correct the conditions which had led to the children's removal.

## VII.    Conclusion

The trial court did not err in finding and concluding grounds exist to terminate Respondent-Mother parental rights under N.C. Gen. Stat. § 7B-1111(a)(2) (2025). "[A]n adjudication of any single ground for terminating a parent's rights under N.C. Gen. Stat. § 7B-1111(a) will suffice to support a termination order. . . . [I]f this Court upholds the trial court's order in which it concludes that a particular ground for termination exists, then we need not review any remaining grounds." *In re J.S.*, 374 N.C. 811, 815, 845 S.E.2d 66, 71 (2020) (citations omitted).

We need not review Respondent-Mother's other arguments regarding termination of parental rights under other prongs of N.C. Gen. Stat. § 7B-1111(a), because supported grounds for termination exist under N.C. Gen. Stat. § 7B-1111(a)(1) (2025). *Id.*

Respondent-Mother has failed to show the trial court prejudicially erred by taking judicial notice of prior court orders or t she was prejudiced by admission of hearsay testimony. The trial court's order terminating both parents' parental rights is affirmed. *It is so ordered.*

AFFIRMED.

Judges STROUD and WOOD concur.

Report per Rule 30(e).